UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 11 |
| PALAZZO DI STONECREST, LLC, | ) | |
| | ) | CASE NO. 06-62584-pwb |
| Debtor. | ) | |
| | ) | JUDGE BONAPFEL |
| _____ | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| RACT ENTERPRISES, INC., | ) | |
| | ) | |
| Movant. | ) | CONTESTED MATTER |
| | ) | |
| V. | ) | |
| | ) | |
| PALAZZO DI STONECREST, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## MOTION FOR ORDER REOPENING BANKRUPTCY CASE

COMES NOW RACT ENTERPRISES, INC., a Georgia corporation (the "Movant"), and requests that this Court enter an order in accordance with 11 U.S.C. 350, Rules 5010 and 9024 of the Federal Rules of Bankruptcy Procedure and Rule 60 of the Federal Rules of Civil Procedure reopening the bankruptcy case of Respondent, PALAZZO DI STONECREST, LLC. In support of this Motion, the Movant respectfully shows the court as follows:

## JURISDICTION

1.

This Court has jurisdiction to consider this Motion pursuant to 28 USC §§157 and 1334. This is a core proceeding pursuant to 28 USC § 157(d). Venue is proper pursuant to 28 USC §§1408 and 1409.

## BACKGROUND

2.

Respondent filed a voluntary petition under Chapter 11 on March 7, 2006.

3.

Respondent was the fee-simple owner of certain commercial real property located at 6600 Hillandale Drive, Lithonia, Dekalb County, Georgia (the "Property"). The Property was the Debtor's only asset at the time of the filing of the voluntary petition.

4.

On July 28, 2006, the Respondent entered into a contract (the "First Contract") with the Movant, doing business as RACT Enterprises, Inc., for certain site improvement work on the Property including clearing, earthwork, erosion control, and the like for a price of $1,274, 898. A counterpart of the First Contract was also executed between the Movant and Top Flight Development Group, Inc. ("TFDG") so that both the Respondent and TFDG were liable for all work performed under the First Contract. Work commenced under the First Contract in August 2006. Respondent filed a Notice of Commencement of Work in the lien records of the Superior Court of DeKalb County, Georgia, on September 8, 2006. True and correct copies of the counterparts of the First Contract are attached hereto as Exhibits "A-1" and "A-2."

5.

On September 21, 2006, the Respondent entered into a second contract (the "Second Contract") with the Movant, doing business as RACT Enterprises, Inc., for additional site improvement work on the Property, including blasting and removal of rock, fill work, storm and sanitary sewer work, erosion control, and the like for a price of $7,009,240.67. A counterpart of the Second Contract was also executed between the Movant and TFDG so that both the Respondent and TFDG were liable for all work performed under the Second Contract. True and correct copies of the counterparts of the Second Contract are attached hereto as Exhibits "B-1" and "B-2."

6.

Matthew White was the corporate representative of both Respondent and TFDG with whom Movant primarily dealt in connection with both the First and the Second Contracts.

7.

By November 2006, all of the site improvement work under the First Contract was completed by Movant. The Movant invoiced Respondent for the work under the First Contract as follows:

**FIRST CONTRACT**

| Invoice Date | Amount |
|---|---|
| 1. September 21, 2006 | $ 702,775.74 |
| 2. November 3, 2006 | 573,704.10 |
| **Total:** | **$1,276,479.54** |

Matthew White executed an acknowledgment on each of the invoices as Respondent's representative. True and correct copies of the invoices sent to Respondent under the First Contract are attached hereto as Exhibits "C-1" and "C-2."

-3-

8.

A Notice of Commencement of work was filed by one of Respondent on September 8, 2006 in the lien records of the Superior Court of DeKalb County, Georgia. A claim of lien against the Property for work performed under the First Contract in the amount of $428,157 was filed by one of Respondent's subcontractors, Arctic Engineers and Constructors, LLC, on November 16, 2006, in the lien records of the Superior Court of DeKalb County, Georgia. A second claim of lien against the Property for work performed under the First Contract in the amount of $1,274,898 was filed by Movant on December 4, 2006, in the lien records of the Superior Court of DeKalb County, Georgia. The second claim of lien was inclusive of the first, but neither lien included charges included in the September 21, 2006, invoice for a change order in the amount of $1,581. A third claim of lien against the Property for work performed under the First Contract in the amount of $1,274,898 was filed by Movant on April 10, 2007, in the lien records of the Superior Court of DeKalb County, Georgia. True and correct copies of the Notice of Commencement and the first, second, and third claims of lien are attached hereto as Exhibits "D-1," "D-2," "D-3," and "D-4" respectively.

9.

Matthew White represented to Movant that TFDG and Top Flight Investment, LLC ("TFI") (collectively "Top Flight") were the same entity, that the Respondent's bankruptcy would be ending soon and that title to the Property would be transferred from Respondent to the Top Flight. With that understanding and pursuant to instructions from Matthew White, the Movant commenced work under the Second Contract in October 2006. The Movant invoiced all of the site improvement work under the Second Contract to the Matthew White at either TFDG or TFI. The work under the Second Contract was invoiced as follows:

## SECOND CONTRACT

| Invoice Date | Amount |
|---|---|
| 1. November 3, 2006 | $ 510,587.80 |
| 2. January 3, 2007 | 310,043.95 |
| 3. February 9, 2007 | 5,950.00 |
| 4. February 19, 2007 | 1,171,170.00 |
| 5. February 19, 2007 | 300,164.00 |
| **Subtotal:** | **$2,297,915.75** |
| 6. April 15, 2007 | $ 764,439.50 |
| 7. April 16, 2007 | 40,600.00 |
| 8. April 16, 2007 | 182,528.00 |
| **Cumulative Subtotal:** | **$3,285,483.25** |
| 9. July 12, 2007 | $    43,760.00 |
| 10. July 12, 2007 | 355,005.00 |
| 11. July 12, 2007 | 218,074.00 |
| 12. July 19, 2007 | 309,062.50 |
| 13. August 31, 2007 | 64,779.50 |
| 14. December 26, 2007 | 14,160.50 |
| **Total:** | **$4,290,324.75** |

Respondent, being a signatory of a counterpart of the Second Contract, was fully liable for all amounts invoiced under the Second Contract. True and correct copies of the invoices sent by Movant to TFDG and TFI under the Second Contract are attached hereto as Exhibits "E-1" through "E-14".

10.

All the work under the Second Contract *for which the Movant was provided plans and specifications* was substantially completed on December 28, 2007. A fourth claim of lien against the Property in the amount of $5,456,154.75 for improvements made under both the First and Second Contracts was recorded by the Movant in the lien records of the Superior Court of DeKalb County, Georgia, on February 20, 2008. Under applicable Georgia law, the lien against the Property should

have priority as of the date work commenced under the contracts in 2006. A true and correct copy of the fourth claim of lien filed by Movant is attached hereto as Exhibit "F."

### FACTUAL BASIS FOR REOPENING CASE

11.

It appears that the Respondent never reported to the Bankruptcy Court its execution of the First and Second Contracts with RACT for site improvement work on the Property and never reported that site improvement work had commenced and was ongoing during the pendency of the bankruptcy.

12.

On March 6, 2007, Respondent filed a motion for an order approving the sale of the Property to TFI free and clear of liens, claims, and encumbrances (the "Sale Motion") based on representations that the all debt owed by the Respondent would be paid from the proceeds of the sale. TFI was described as being (I) a related entity to Respondent, with Matthew White as a managing member of both limited liability companies, and (ii) as having been formed at the request of the lender financing the project. The proposed sale price of the Property was listed in the Sale Motion as $12,600,000. The Respondent's Sale Motion purported to list all of the holders of claims liens and encumbrances against the Property. The listed claims totaled $11,770,740.94.

13.

The Movant's claim was listed in the Sale Motion as being only $426,157. In reality, the Movant had filed a claim of lien in December 2006 in the amount of $1,274,898 for site improvements performed under the First Contract. The Sale Motion reflected only a claim of lien that was filed by one of Movant's subcontractors, as shown in paragraph 8 above. Moreover, the

Respondent' Sale Motion failed to list the Movant's ongoing site improvement work under the Second Contract and its resulting inchoate lien for improvements to the Property in an invoiced amount of $2,297,915, as of the filing date of the Sale Motion.

14.

In order to address any question as to the adequacy of the proposed sale price of the Property between the Respondent and TFI (since Matthew White was a managing member of each), the Respondent gave the following additional assurance that the proposed sale price would be sufficient to pay *all of Respondent's indebtedness*:

> The purchase price is adjustable. It will cover all debt owed by the Debtor so that the Debtor will be debt free and can dismiss the pending Chapter 11 case. The funds received from Top Flight are to be deducted from the $18,000,000 loan obtained by Top Flight from the Stillwater Asset Backed Fund, LLP.

In other words, the purchase price for the Property would be adjusted upward from $12,600,000, if necessary, in order to provide Respondent with sufficient funds to pay all of its indebtedness.

15.

Based on the representations made in the Sale Motion and arguments of counsel, the court granted the motion and entered a sale order on March 16, 2007. The court's sale order provided in part as follows:

> All liens, encumbrances and interests shall attach to the proceeds of the proposed sale to the extent that they exist and to the extent that

they are not paid at closing, giving effect to the existing priorities, regardless of any transferring or commingling of such proceeds.

16.

It appears that the Respondent never intended to pay the full amount of its indebtedness to Movant. On or about April 16, 2007, following the closing of the sale of the Property, the Respondent paid Movant and its subcontractors $726,157 for work on the First Contract. In addition, each of the Respondent and TFDG executed, as co-makers, a 90-day interest-free promissory note payable to Movant in the amount of $348,000 (two notes were executed, one by Dennis Wonnum and one by Matthew White). The Respondent told Movant's representatives that since site improvement work was ongoing on the Property the remaining amounts owed would be paid within ninety days from extra funds generated by the financing that would be held in escrow following the closing of the sale of the Property. In exchange the Movant gave a release of lien dated April 16, 2007, whereby it gave a limited release of claims of lien under the First Contract. The release of lien was expressly limited to the notice of commencement filed by Movant on September 8, 2006, the claim of lien filed by Movant's subcontractor on November 16, 2006, and the claim of lien filed by Movant's on December 4, 2006. The lien release expressly provided that "such cancellation and release is strictly limited to the above-referenced liens and shall not be construed to waive any legal right or remedy, including filing additional liens against the property, should existing or future debts or obligations be unpaid...." True and correct copies of both promissory notes are attached hereto as Exhibit "G." A true and correct copy of the release of lien is attached hereto as Exhibit "H."

17.

The payment made and the promissory note issued, on or about April 16, 2007, represented a total paid (and to be paid) by Respondent to Movant of $1,074,157 out of a total of $1,276,479 due on the First Contract, leaving a deficiency of $202,322. No portion of the amount owed by Respondent under the Second Contract was paid, nor was any inchoate lien thereunder released or subordinated. Moreover, pursuant to the court's sale order, the inchoate lien for the amount due under the Second Contract attached to the proceeds of the sale of the Property, including such additional proceeds of the loan necessary to adjust the purchase price to an amount sufficient to pay all debt of the Respondent.

18.

The Respondent's Report of Sale was filed on April 19, 2007, and on May 7, 2007, the Respondent filed financial reports for the month of September 2006, the quarters of October through December 2006 and January through March 2007, and the months of April and May 2007. These reports failed to disclose the payment of $300,000 to the Movant and the execution by the Respondent of the promissory note payable to Movant. Indeed, these reports failed to disclose that the Respondent owed any money whatsoever to Movant, even though Respondent was indebted to Movant for improvements made to the Property in the amount of $348,000 under the promissory note, an additional $202,322 under the First Contract and $3,285,483 under the Second Contract.

19.

The Respondent filed a motion to dismiss the bankruptcy case on April 30, 2007, based on the following representations:

> All of the Debtor's assets have been sold. All liens, claims and encumbrances have been paid. Pursuant to the Order Approving Sale, Debtor's counsel is retaining in escrow the balance of sales proceeds and has on hand sufficient funds with which to pay any remaining claims and administrative expenses of the case, including fees owed to the United States Trustee pursuant to 28 USC § 1930.

Again, the Respondent's motion to dismiss failed to disclose that the Respondent owed any money whatsoever to Movant, even though Respondent was indebted to Movant for improvements made to the Property in the amount of $348,000 under the promissory note, an additional $202,322 under the First Contract, and $3,285,483 under the Second Contract.

20.

In August 2007, in exchange for an agreement from Respondent and representatives of the TFDG and TFI for prompt payment of all unpaid amounts due, including amounts due under the promissory note, Movant agreed accept $348,000.00 (the amount of the promissory note) in full payment of the First Contract and to apply discounts or credits to the Second Contract in the amount of $485,332.23, such that the unpaid balance due on the Second Contract as of August 2007 would have been $3,790,842. Despite the promised prompt payment in exchange for the agreed discounts, the Respondent, TFDG, and TFI failed to make any payments to Movant on the promissory note or on the Second Contract. Because the Respondent failed to make payment as agreed, RACT's agreement to discount the amounts due under the First and Second Contracts is null and void, and the total indebtedness through December 2007 due to Movant from Respondent was $4,301,314.

21.

Despite the fact that Movant's site improvement work greatly enhanced the value of the Property and made the financing of the sale from the Respondent to TFI possible, the Respondent, TFDG, and TFI have thus far avoided the payment of their legitimate obligations to Movant by either deliberately or through inadvertence withholding facts from the Bankruptcy Court and the Movant and/or misrepresenting facts to the Court and the Movant.

## LEGAL BASIS FOR REOPENING CASE

22.

Under Bankruptcy Rule 5010, the Court may reopen a bankruptcy case "on motion of the debtor or other party in interest" pursuant to 11 USC § 350(b) in order "to accord relief to the debtor, or for other cause." Rule 60 of the Federal Rules of Civil Procedure ("FRCP") applies to this motion "except that (1) a motion to reopen a case under the Code ... is not subject to the one year limitation prescribed in Rule 60(b)."

23.

FRCP 60, includes among the grounds for relief from a final order (such as the order dismissing the Respondent's bankruptcy case), "(1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; ... or (5) and any other reason that justifies relief."

24.

Movant's claims for improvement to the property were well known to the Respondent and performance of the improvements created an inchoate lien on the Property subordinate to recorded liens until timely recorded and thereafter of equal priority with all other recorded materialmen's liens

relating to the work done. Spicewood, Inc. v. Ferro Pipeline Co., Inc., 181 Ga. App. 277, 351 S.E.2d 711, (1986); O.C.G.A. §§ 44-14-361 and 44-14-361.1; Browning, et al. v. Gaster Lumber Co., 267 Ga. 72, 475 S.E.2d 576 (1996).

25.

The Movant's motion to reopen should be granted because the basis of the dismissal of the Respondent's bankruptcy case was incorrect, namely that all indebtedness of the Respondent had either been paid or would be paid from proceeds of the sale of the Property. Whether Respondent misrepresented facts to, and withheld facts from, the Bankruptcy Court deliberately or through inadvertence is of no consequence. Reopening the case would permit the Court (or a trustee appointed by the Court) to determine whether the Respondent's estate still has assets for distribution or has claims to assets which could be distributed on recovery, whether the proceeds of sale were distributed in their lawful priority, and if not, whether any improperly distributed assets can be recovered and redistributed in their lawful priority.

26.

Movant's failure to object to the Respondent's sale motion is immaterial because the Respondent's sale motion *represented* that all creditors including Movant would be paid in full and representatives of Movant were repeatedly assured that Movant would be paid in full. *Cf.* In Re: Charles Frederick Wolff, 175 B.R. 27 (1994, E.D. AR).

27.

The decision on whether to reopen this case should not be a battleground for determining the underlying merits. The key issue is the benefit to creditors, in this case the Movant. Here, serious

questions have been raised as to whether the Movant, as a creditor of the Respondent, has been treated lawfully and in accordance with the provisions of the Court's sale order.

Respectfully submitted this 11th day of August, 2008.

_____
Jerry L. Sims
Georgia Bar No. 648400

SIMS MOSS KLINE & DAVIS LLP
3 Ravinia Drive
Suite 1700
Atlanta, Georgia, 30346
Phone: (770) 481-7200
Fax: (770) 481-7210
E-Mail:  jlsims@smkdlaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have the date set forth below served the within and foregoing MOTION FOR ORDER REOPENING BANKRUPTCY CASE and accompanying exhibits upon each of the parties set forth below by depositing a true and correct copy of same in the United States Mail with adequate postage thereon and addressed as follows and by e-mail as noted below:

Leroy Culton, Esq.
Office of the United States Trustee
362 Richard B. Russell Building
75 Spring Street, SW
Atlanta, Georgia 30303
(and via e-mail at Leroy.Culton@usdoj.gov)

David L. Miller, Esq.
300 Galleria Parkway, NW
Suite 960 - The Galleria
Atlanta, Georgia 30339
(and via e-mail at millerlawfirm@mindspring.com)
Attorney for Respondent

Matthew White
Top Flight Development Group, Inc.
Top Flight Investment, LLC
260 Peachtree Street, Suite 1400
Atlanta Georgia 30303

This 11th day of August, 2008.

_____
Jerry L. Sims
Georgia Bar No. 648400

SIMS MOSS KLINE & DAVIS LLP
3 Ravinia Drive
Suite 1700
Atlanta, Georgia, 30346
Phone: (770) 481-7200
Fax: (770) 481-7210
E-Mail: jlsims@smkdlaw.com